**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JOSEPHINE GRIMM and | ) | |
| LESTER GRIMM, | ) | |
|       Plaintiffs, | ) | |
| | ) | Civil Action No.08-785 |
|     v. | ) | Judge Nora Barry Fischer |
| | ) | |
| FIRST NATIONAL BANK OF | ) | |
| PENNSYLVANIA, | ) | |
|       Defendant. | ) | |


| | | |
|---|---|---|
| JOSEPHINE GRIMM and | ) | |
| LESTER GRIMM, | ) | |
|       Plaintiffs, | ) | |
|     v. | ) | Civil Action No. 08-816, related. |
| | ) | Judge Nora Barry Fischer |
| CHASE BANK USA, NA, | ) | |
|       Defendant. | ) | |

## MEMORANDUM OPINION

## I.    INTRODUCTION

      Plaintiffs Josephine Grimm and Lester Grimm (hereinafter "Plaintiffs") filed the first styled

civil action against Defendant First National Bank of Pennsylvania (hereinafter "FNB"), alleging

nine causes of action arising out of alleged fraudulent activity associated with checking accounts

Plaintiffs held with FNB.  Specifically, Plaintiffs allege: (1) breach of contract; (2) negligence; (3)

fraudulent misrepresentation; (4) negligent misrepresentation; (5) breach of fiduciary duty; (6)

violation of the Pennsylvania Unfair Trade Practices/Consumer Protection Law ("UTP/CPL"); (7)

violation of the Uniform Commercial Code ("UCC"); (8) violation of Electronic Funds Transfer Act; and (9) negligence *per se.* Pending before the Court is Defendant's Motion to Compel Arbitration or, in the alternative, Partial Motion to Dismiss Plaintiffs' Amended Complaint [7] at Civil Action No. 08-785.

Similarly, Plaintiffs filed the related lawsuit at Civil Action No. 08-816 against Defendant Chase Bank USA, NA [1] (hereinafter "Chase"), alleging eight causes of action arising out of alleged fraudulent activity associated with credit card accounts Plaintiffs held with Defendant. Specifically, Plaintiffs allege: (1) breach of implied contract; (2) negligence; (3) fraudulent misrepresentation; (4) negligent misrepresentation; (5) breach of fiduciary duty; (6) violations of the Pennsylvania Unfair Trade Practices/Consumer Protection Law ("UTP/CPL"); (7) violation of the Truth in Lending Act ("TILA") and Consumer Credit Protection Act ("CCPA"); and (8) negligence *per se.* Pending before the Court is Defendant Chase's Motion to Dismiss Plaintiffs' Amended Complaint [3] at Civil Action No. 08-816.

As said pending Motions are strikingly similar in their factual nature and the relief requested, the Court will address these Motions simultaneously.

## II.    FACTUAL BACKGROUND

### A.    Plaintiffs v. FNB (08-785)

During the relevant time period, between October 2005 and April 2006, Plaintiffs allege that

---

[1] Originally, Plaintiffs filed said action against JP Morgan Chase & Company. However, the parties filed a Joint Stipulation correctly identifying the Defendant as Chase Bank USA, NA. (Civil Action No. 08-816, Docket No. 27).

they held "at least" two checking accounts with FNB.[2] (Civil Action No. 08-785, Docket No. 1, Exhibit A at ¶5).[3] During this time period, Plaintiffs allege that these checking accounts were defrauded in an amount in excess of $131,952.00. (*Id*. at ¶6). Specifically, Plaintiffs allege that FNB failed to notify them of repeated withdrawals from their accounts, namely 25 withdrawals made over three days by the same entity, "OceanViewSA." [4] (*Id*. at ¶¶7-8). In addition, Plaintiffs allege that they were disabled while the fraudulent activity occurred, and were thus unable to immediately detect the fraudulent charges. (*Id*. at ¶9). According to letters from their treating physicians attached to the Amended Complaint, Mr. Grimm suffers from severe cardiac problems, including the sequelae of three cerebral vascular accidents ("CVA"),[5] while Mrs. Grimm suffers from fourth stage Lyme disease,[6] depression, and neurological problems. (*Id*. at Exhibits 1-2).

---

[2]

Plaintiffs have attached the agreements governing their checking accounts with FNB to their Amended Complaint. (*See* Civil Action No. 08-785, Docket No. 1-3 at 22-86).

[3]

Hereinafter, the Court will cite Plaintiffs' Amended Complaint as "Docket No. 1."

[4]

According to internet blogs, "OceanviewSA" is a common unauthorized charge that appears on bank statements and is associated with identity theft through betting and or gaming. *See* Posting of vgyhnji, to http://www.casinomeister.com/forums/online-casinos/8958-oceanviewsa-can anyone-help.html (July 2005); *see also* Posting of Dan (el_passo) http://www.elpassoblog.com/identify-spoof-emails-and-stop-identity-thef/ (Jun. 29, 2006).

[5]

A CVA is an apoplectic stroke, a hemorrage into the brain or blockage of a blood vessel in the brain. 1 J.E. Schmidt, M.D., <u>Attorneys' Dictionary of Medicine</u> C-164 (2007).

[6]

Lyme disease is "a recurrent, multisystemic disorder caused by the sprochete *Borrelia burgdoferi*; vectors for human infection are the ticks ... It begins in most cases with erythema chronicum migran (at least 5 cm in diameter), which is followed by myalgia, arthritis of large joints, stiff neck, nervous system problems, cardiovascular problems, and other systemic symptoms, such

After detecting the alleged fraudulent activity, Plaintiffs notified FNB and the Secret Service of same. (*Id*. at ¶¶10-11). A special agent with the Secret Service conducted an investigation into the fraudulent activity associated with Plaintiffs' account with Defendant, as well as their accounts with other credit lending institutions. In a letter addressed to Plaintiffs' counsel dated December 11, 2006, the Secret Service agent stated that the Plaintiffs were defrauded by unknown individuals in an amount in excess of $600,000.00. (*See Id.*, Exhibit 4). The agent further stated that it appeared that Plaintiffs were defrauded through the use of hidden computer software, known as spyware, associated with a company believed to be RiverBelleCasino.com,[7] a subsidiary of Belle Rock Entertainment, an online gambling website. *Id*. During the course of the Secret Service's investigation, Mrs. Grimm stated that she voluntarily submitted personal information to RiverBelleCasino.com in order to download online gambling software. *Id*. In the months after submitting this information, numerous individual credit cards were obtained by unidentified third parties in Mrs. Grimm's name, and these credit cards accumulated large amounts of unauthorized charges. *Id*.

Plaintiffs allege that FNB was obligated to provide fraud protection on their checking accounts and failed to satisfy this obligation by overlooking the fraudulent activity and refusing to

---

as chills, fever, headache, malaise, and vomiting." Dorland's Illustrated Medical Dictionary 545 (31st ed. 2007).

[7]

River Belle Online Casino was launched in 1997, is a member of the Interactive Gaming Council (IGC), and is licensed to conduct business by the Government of Gibralter. "You can play for fun, or play for real money by downloading the Online casino software." River Belle Online Casino offers over 200 interactive games. *See* http://www.riverbelle.com/portal/about-us.asp?VT=524285658&EventId=27227.

compensate Plaintiffs for the fraudulent withdrawals. (Docket No. 1 at ¶¶14-15).

**B.     Plaintiffs v. Chase (08-816)**

Plaintiffs allege that between October 2005 and July 2006, they held "at least" five credit card accounts with Chase.[8]  (Civil Action No. 08-816, Docket No. 1, Exhibit C  at ¶5).[9]  During this time period, Plaintiffs allege that there were fraudulent charges made to their credit cards with Chase in an amount in excess of $170,000.00. (*Id*. at ¶6). Plaintiffs also allege that Chase failed to notify them that unusually large amounts were being charged to their credit cards. (*Id*. at ¶7). For example, Plaintiffs allege that Chase failed to notify them that one entity, "Flightserv," [10] made eight transactions in two days involving the Plaintiffs' accounts, totaling approximately $5,800.00. (*Id*. at ¶8).  As detailed above, Plaintiffs allege that they were disabled while the fraudulent activity associated with their credit card accounts occurred and were thus unable to detect the fraud until August of 2006.  (*Id*. at ¶¶7-8).

After detecting the alleged fraudulent activity, Plaintiffs notified Chase and the Secret Service of the fraudulent charges.  (*Id*. at ¶¶8-9).  As noted, a special agent with the Secret Service conducted an investigation into the fraudulent activity associated with Plaintiffs' Chase accounts.  Plaintiffs further allege that Chase was obligated to provide fraud protection on their credit cards and failed

---

[8]

Plaintiffs have attached credit card agreements governing their accounts with Chase to their Amended Complaint. (*See* Civil Action No. 08-816 at Docket No. 1, Exhibit 5-9).

[9]

Hereinafter, the Court will cite Plaintiffs' Amended Complaint as "Docket No. 1."

Flightserv appears to be an Atlanta, Georgia based travel services company. *See* http://www.bizjournals.com/atlanta/stories/2004/06/21/story7.html

to satisfy this obligation by overlooking the fraudulent activity and only reimbursing the Grimms for approximately $112,000.00 of the fraudulent charges. (*Id* at ¶¶13-14).[11]

### III.    PROCEDURAL HISTORY

### A.    Plaintiffs v. FNB (08-785)

Plaintiffs filed an Amended Complaint on May 16, 2008 in the Court of Common Pleas of Westmoreland County, Pennsylvania.[12]  (Civil Action No. 08-785, Docket No. 1 at ¶ 3).  On June 6, 2008, FNB timely removed the action to federal court based on this Court's federal question jurisdiction pursuant to 28 U.S.C. § 1331 in that Plaintiffs' claims assert a violation of the Electronic Funds Transfer Act, a law of the United States. (Civil Action No. 08-785, Docket No. 1). At that time, this case was assigned to Judge David S. Cercone. Thereafter, FNB filed its Motion to Compel Arbitration or, in the Alternative, Partial Motion to Dismiss Plaintiffs' Amended Complaint on June 17, 2008.  (Civil Action No. 08-785, Docket No. 7).  On July 21, 2008, Plaintiffs filed a Response to FNB's Motion to Compel Arbitration or, in the Alternative, Partial Motion to Dismiss Plaintiffs' Amended Complaint along with a Motion to Strike.  (Civil Action No. 08-785, Docket Nos. 13 and 15).  On July 23, 2008, Judge Cercone denied Plaintiffs' Motion to Strike.  (Civil Action No. 08-785,

---

[11]

Although not pled in the Amended Complaint, Justin Lewis, Esquire, former counsel for Plaintiffs, also informed the Court during oral argument on the related cases that a representative from Chase harassed the Plaintiffs and Mr. Lewis with debt collection calls.

[12]

FNB did not attach copies of all process orders and pleadings served upon it prior to service of the Amended Complaint because they are voluminous due to the initial presence of fifteen (15) defendants, most of whom filed preliminary objections to the original complaint.  (Civil Action No. 08-785, Docket No. 1 at ¶ 3).  Upon request of the Court, in accordance with 28 U.S.C. § 1446(a), FNB will file said papers.  *Id.*

Docket No. 17). On August 1, 2008, FNB filed a Reply to Plaintiffs' Response. (Civil Action No. 08-785, Docket No. 19). Subsequently, this case was reassigned to Judge Nora Barry Fischer on August 5, 2008. (Civil Action No. 08-785, Docket No. 21).[13] On September 3, 2008, Kevin M. Miller entered his appearance as the Plaintiffs' lead attorney. (Civil Action No. 08-785, Docket No. 27). The Court conducted a Case Management Conference and heard argument on any pending Motions in the related cases on September 4, 2008. (Civil Action No. 08-785, Docket No. 28). On September 5, 2008, FNB filed its Notice to Court as to Plaintiffs' Accounts at FNB. (Civil Action No. 08-785, Docket No. 29). Subsequently, on September 5, 2008, Justin Lewis, Esquire filed a Motion to Withdraw as Counsel for Plaintiffs, which the Court granted. (Civil Action No. 08-785, Docket Nos. 30 and 31). On September 15, 2008, FNB filed a Notice to Court Regarding Preemption of Plaintiffs' Claims. (Civil Action No. 08-785, Docket No. 33).

### B. Plaintiffs v. Chase (08-816)

With respect to Civil Action No. 08-816, Plaintiffs filed an Original Complaint in the Court of Common Pleas of Westmoreland County on July 30, 2007, naming sixteen (16) defendants, including Chase. *See Lester Grimm, et. al. v. Advanta Bank Corp., et. al.*, No. 07-CI-05923 (C.P. Westmoreland County Jul. 30, 2008). The state court dismissed the Original Complaint and granted Plaintiffs leave to amend. *Id.* On May 15, 2008, Plaintiffs filed an Amended Complaint in the Court of Common Pleas of Westmoreland County, Pennsylvania. (Civil Action No. 08-816, Docket No.

---

[13]

FNB did not indicate this case's relationship to other pending cases brought by the Plaintiffs, on removal. Upon review of the various complaints filed by the Grimms and removed by the various Defendants, the Court sua sponte assigned all of the related cases to the undersigned Judge as she was assigned the first case filed in this Court.

1, Exhibit 5). On June 13, 2008, Chase timely removed the action to federal court based on this Court's original jurisdiction. (Civil Action No. 08-816, Docket No. 1). At that time, this case was assigned to Judge Joy Flowers Conti. Thereafter, Chase filed a Motion to Dismiss Plaintiffs' Amended Complaint on June 20, 2008. (Civil Action No. 08-816, Docket No. 3). In response, on July 9, 2008, Plaintiffs filed a Motion to Strike Defendant's Motion to Dismiss Plaintiffs' Amended Complaint along with a Response to Defendant's Motion to Dismiss Plaintiffs' Amended Complaint. (Civil Action No. 08-816, Docket Nos. 5, 7). On August 6, 2008, this case was reassigned to Judge Nora Barry Fischer.[14] (Civil Action No. 08-816, Docket No. 14). On that same day, the Court ordered Plaintiffs to file a supplemental brief addressing the United States Court of Appeals for the Third Circuit's recent decision in *Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, (3d Cir. Jul. 16, 2008). (Civil Action No. 08-816, Docket Nos. 14 and 17). Chase's Response to Plaintiffs' Motion to Strike was filed on August 11, 2008, and the Court denied said Motion as moot on August 13, 2008. The pending Motion to Dismiss was fully briefed on August 19, 2008 when Plaintiffs filed their Supplement to Plaintiffs' Brief in Opposition to Defendant's Motion to Dismiss. (Civil Action No. 08-816, Docket No. 19). On September 3, 2008, Kevin M. Miller entered his appearance as the Plaintiffs' lead attorney. (Civil Action No. 08-816, Docket No. 25). The Court conducted a Case Management Conference and heard argument on any pending Motions in the related cases on September 4, 2008. (Civil Action No. 08-816, Docket No. 26). In addition, on that same day, the parties filed a Stipulation to Amend Caption to correctly identify the Defendant as Chase Bank USA, NA, which the Court granted. (Civil Action No. 08-816, Docket Nos. 27 and 28).

---

[14] *See* note 8, *supra*.

On September 5, 2008, Justin Lewis, Esquire filed a Motion to Withdraw as Counsel for Plaintiffs, which the Court granted. (Civil Action No. 08-816, Docket Nos. 29 and 30). On September 15, 2008, Plaintiffs filed a Supplement to Plaintiffs' Brief in Opposition to Defendant's Motion to Dismiss. (Civil Action No. 08-816, Docket No. 31).

## IV.    LEGAL STANDARD

The Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* ("FAA"), provides in pertinent part that "[a] written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA also provides that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States District Court ... for an Order directing that such arbitration proceed in the manner provided in the agreement." 9 U.S.C. § 4. The FAA further provides that if a court is satisfied that the issue before it is referable to arbitration, upon application of one of the parties, a court shall stay its proceedings until such arbitration has been had in accordance with the terms of the agreement. 9 U.S.C. § 3. When a party requests a stay of proceedings as part of a motion to compel arbitration, a District Court is obligated to grant the stay if it decides to compel arbitration. *Lloyd v. Hovensa*, LLC, 369 F.3d 263, 269 (3d Cir. 2004). In addition to granting a stay and compelling arbitration where required by the FAA, the court in its discretion may also dismiss the action instead of staying the case "[if] all the claims involved in an action are arbitrable." *Berkery v. Cross Country Bank*, 256 F. Supp. 2d 359, 364 (E.D. Pa. 2003)(citing *Seus v. John Nuveen & Co., Inc.*, 146 F.3d 175, 179

(3d Cir. 1998)).

The United States Court of Appeals for the Third Circuit has explained that "if ... a court deems a controverted arbitration clause a valid and enforceable agreement, it must refer questions regarding the enforceability of the terms of the underlying contract to an arbitrator." *Harris v. Green Tree Financial Corp.,* 183 F.3d 173, 179-80 (3d Cir.1999). "In conducting this inquiry the district court decides only whether there was an agreement to arbitrate, and if so, whether the agreement is valid." *Great Western Mort. Corp. v. Peacock,* 110 F.3d 222, 228 (3d Cir.1997). "The FAA makes agreements to arbitrate enforceable to the same extent as other contracts." *Harris, supra,* 183 F.3d at 178. Thus, "federal law presumptively favors the enforcement of arbitration agreements." *Id.*

To this end, "[t]he Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay or the like defense to arbitrability." *Moses H. Cone Memorial Hosp. v. Mercury Construction Corp.,* 460 U.S. 1, 24-25 (1983).

"Before a federal district court entertaining a motion to compel arbitration may order a reluctant party to arbitrate, however, the FAA 'requires the court to engage in a limited review to ensure that the dispute is arbitrable-i.e., that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement.'" *Berkery*, 256 F.Supp. 2d at 365 (quoting *PaineWebber, Inc. v. Hartmann*, 921 F.2d 507, 511 (3d Cir. 1990). An arbitration provision should be interpreted to cover the dispute unless it can be stated with "positive assurance" that the dispute was not meant to be arbitrated. *Becker Autoradio U.S.A., Inc. v. Becker*

*Autoradiowerk GmbH,* 585 F.2d 39, 44 (3d Cir. 1978).  In making this determination, the court's approach should be guided by a "presumption of arbitrability." *PaineWebber Inc.*, 921 F.2d at 511.

## V.  DISCUSSION OF  FNB'S MOTION TO COMPEL ARBITRATION (08-785)

FNB argues that Plaintiffs' claims are within the scope of the binding arbitration agreement, and, in accordance with the FAA, this Court should stay the proceeding and order the parties to arbitration.  (Civil Action No 08-785, Docket No. 8 at 3-4).  Plaintiffs maintain that (1) the arbitration clause violates the Pennsylvania Plain Language Consumer Contract Act ("PLCCA"), 73 P.S. § 2205; (2) the arbitration clause in the agreement is unconscionable and unenforceable; (3) that there may be other documents governing the contractual relationship between FNB and the Plaintiffs; (4) FNB has waived its right to elect Arbitration; and (5) Congress' deliberations regarding the Arbitration Fairness Act of 2007 should preclude this Court from enforcing any arbitration provision. (Civil Action No. 08-785, Docket No. 13 at 2-4).  The Court will address each of these arguments, in turn.

### 1.  The Parties' Agreement

Plaintiffs allege that they entered into a contract with FNB and attach three deposit Account Agreements and related documentation to their Amended Complaint.  (Civil Action No. 08-785, Docket No. 1 at ¶ 17).  Specifically, Plaintiffs attach a March 2005 Deposit Account Agreement (Civil Action No. 08-785, Docket No. 1-3 at 22-45), a September 2004 Deposit Account Agreement (*Id*. at 46-70) , and an October 2002 Agreement (*Id*. at 71-86).  FNB concedes that its relationship is governed by these agreements.  (Civil Action No. 08-785, Docket No. 8 at 3).

The March 2005 Deposit Account Agreement, at page eight (8), section thirty-five (35), titled Arbitration, states in bold and capitalized letters:

> [t]he Customer and the Bank agree to resolve all claims or controversies arising out of or related to the account, this Agreement or its breach by arbitration under the current rules and supervision of the American Arbitration Association if we elect to submit any such claim or controversy to arbitration. The decision and award of the arbitrator shall be held final and binding and may be entered in any court having jurisdiction. The arbitration shall be held and the award shall be deemed to be made in the county in which the Bank has its principal offices. The arbitrators shall not be authorized to award punitive damages to either party.

(Civil Action No. 08-785, Docket No. 1-3 at 22). The September 2004 and October 2002 agreements contain an identical provision. (*Id*. at 53, 74). In addition, section thirty-two (32) of the March 2005 agreement, titled "Choice of Law," states that "the account relationship is governed by the laws of the Commonwealth of Pennsylvania (without regard to its choice of law provision, and, to the extent applicable, the laws of the United States)." (*Id*. at 28).

## 2. Whether the Arbitration Agreement is Within the Scope the FAA

The FAA governs a contract if it involves interstate commerce. 9 U.S.C. § 2. The parties do not dispute that the contract in this case involves "commerce" as defined in 9 U.S.C. § 1. Thus, the arbitration clause at issue falls within the scope of the FAA.

The contract in this matter states that "the Customer and the Bank agree to resolve all claims or controversies arising out of or related to the account, this Agreement or its breach by arbitration under the current rules and supervision of the American Arbitration Association if we elect to submit

any such claim or controversy to arbitration." (Civil Action No. 08-785, Docket No. 1-3 at 22). Considering that the arbitration clause is broad, in that it covers "all claims and controversies," and contains no limiting language, the Court finds that the claims asserted by Plaintiffs fall within the scope of said clause. The Court's finding is further supported by the fact that all the claims asserted by Plaintiffs arise out of alleged fraudulent activity associated with the checking accounts held with FNB.

### 3. Applicability of the PLCCA

Plaintiffs argue that the arbitration clause contained in the deposit account agreement violates the Pennsylvania Plain Language Consumer Contract Act ("PLCCA")[15] because the contract is over 20 pages of "legalese," indicating that it is hard to read and understand. Further, the arbitration clause is "buried on page 8." (Civil Action No. 08-785, Docket No. 14 at 3). However, the PLCCA does not control the validity of the arbitration provision in this case because the contracts in this matter are excluded from the Act. The PLCCA does not apply to "documents used by financial institutions, which financial institutions are subject to examination of or other supervision by Federal or State regulatory authorities, or documents used by affiliates, subsidiaries or service corporations of such financial institutions." 73 P.S. § 2204(b)(5). Accordingly, considering the inapplicability of the PLCCA, the Court finds that Plaintiffs are essentially arguing that the arbitration clause is procedurally unconscionable. This argument will be addressed below.

---

[15]

*See* 73 P.S. § 2205. The PLCCA was enacted to promote the writing of consumer contracts in plain language. The purpose of said Act is to protect consumers from making contracts that they do not understand and help consumers to better know their rights and duties under those contracts. 73 P.S. § 2202.

### 4.     Whether the Arbitration Clause is Valid and Enforceable

Plaintiffs argue that the arbitration clause in the deposit account agreement is unconscionable and unenforceable. (Civil Action No. 08-785, Docket No. 14 at 2). Specifically, the Plaintiffs assert that (1) the arbitration clause is hidden on page eight (8) of the agreement and is hard to read and understand; (2) they did not have a meaningful choice in accepting the arbitration clause, and (3) the arbitration clause is between parties of unequal bargaining power, especially since the Plaintiffs did not read or agree to be bound by said clause. (*Id.*).

The interpretation and construction of arbitration agreements are determined by reference to federal substantive law. However, pursuant to section two of the FAA, federal courts may apply state law where applicable, i.e., where a party raises contract defenses to invalidate arbitration agreements. *Harris,* 183 F.3d at 179. In this case, Plaintiffs have raised the contract defense of unconscionability. Under Pennsylvania law,

> [u]nconscionability is a "defensive contractual remedy which serves to relieve a party from an unfair contract or from an unfair portion of a contract." *Germantown Mfg. Co. v. Rawlinson,* 341 Pa. Super. 42, 491(1985) (quoting D. DOBBS, HANDBOOK ON THE LAW OF REMEDIES 707 (1973)). The party challenging a contract provision as unconscionable generally bears the burden of proving unconscionability. *Bishop v. Washington,* 331 Pa. Super. 387, 480 A.2d 1088, 1094 (1984); *see also Argo Welded Products, Inc. v. J.T. Ryerson Steel & Sons,* 528 F.Supp. 583, 592-93 (E.D. Pa. 1981).

*Harris*, 183 F.3d at 181. Here, Plaintiffs are challenging the arbitration provision as unconscionable; thus, Plaintiffs have the burden of proving that said arbitration clause is unconscionable.

> [i]n evaluating claims of unconscionability, courts generally recognize two categories, procedural, or "unfair surprise,"

unconscionability and substantive unconscionability. *See Ferguson v. Lakeland Mut. Ins. Co.,* 408 Pa. Super. 332, 596 A.2d 883, 885 (1991); *Bishop,* 480 A.2d at 1095; *Germantown,* 491 A.2d at 145-46. Procedural unconscionability pertains to the process by which an agreement is reached and the form of an agreement, including the use therein of fine print and convoluted or unclear language. *See* E. ALLAN FARNSWORTH, CONTRACTS § 4.28 (2d ed.1990). This type of unconscionability involves, for example, "material, risk-shifting" contractual terms which "are not typically expected by the party who is being asked to 'assent' to them" and "often appear[ ] in the boilerplate of a printed form." *Germantown,* 491 A.2d at 145-46. Substantive unconscionability refers to contractual terms that are unreasonably or grossly favorable to one side and to which the disfavored party does not assent. *See id.,* at 145-147; *Denlinger, Inc. v. Dendler,* 415 Pa. Super. 164, 608 A.2d 1061, 1068 (1992). Thus, "[u]nconscionability requires a two-fold determination: that the contractual terms are unreasonably favorable to the drafter and that there is no meaningful choice on the part of the other party regarding acceptance of the provisions." *Bensalem Township v. International Surplus Lines Ins. Co.,* 38 F.3d 1303, 1312 (3d Cir.1994) (quoting *182 Worldwide Underwriters Ins. Co. v. Brady,* 973 F.2d 192, 196 (3d Cir. 1992)).

*Harris,* 183 F.3d at 181-182.

Considering the inapplicability of the PLCCA, the Court finds that Plaintiffs are contending that the arbitration clause is procedurally unconscionable. Specifically, the arbitration clause is "buried on page 8, " amongst 20 pages of "legalese," making the agreement hard to read and understand. (Civil Action No. 08-785, Docket No. 19 at 2). However, courts in this district applying Pennsylvania law of unconscionability, have held that an arbitration provision is enforceable, thus finding that the clause was not unconscionable, where it was not printed more prominently than the other parts of the contract. *See McCullough v. Shearson Lehman Bros., Inc.*, 1988 WL 23008 (W.D. Pa. 1988). Further, arbitration clauses printed on the back of contracts have been routinely enforced.

15

*See also Troshak v. Terminix Int'l Co.,* Civ No. 98-1727, 1998 WL 401693, at * 3 (E.D. Pa. 1998)(court enforced arbitration provision where the terms and conditions were on the reverse side of the contract, not shown to the plaintiffs, and plaintiffs claimed they did not read the terms). Moreover, "contracting parties are normally bound by their agreements, without regard to whether the terms thereof were read and fully understood and irrespective of whether the agreement embodied reasonable or good bargains." *Troshak*, 1998 WL 401693 at *3 (citing *Simeone v. Simeone*, 525 Pa. 392, 400 (Pa. 1990)); *see also Standard Venetian Blind Co., v. American Empire Ins. Co.*, 503 Pa. 300 (Pa. 1983) (stating that failure to read contract does not warrant avoidance or nullification of its provisions).

Here, the arbitration provision and its terms and conditions were printed on the front side of the three deposit account agreements. Although the October 2002 agreement that Plaintiff Josephine Grimm signed is more condensed and has smaller type than the other agreements, over all, each arbitration clause is in bold, capitalized, and is noticeable upon reading the contract. Thus, the Court finds that the arbitration agreement is not procedurally unconscionable.

Plaintiffs next argue that the arbitration clause is unconscionable and unenforceable because they did not read and agree to be bound by said clause. (Civil Action No. 08-785, Docket No. 14 at 2). Plaintiffs' argument is without merit. *See Troshak*, 1998 WL 401693 at *3; *see also Juan Morales v. Sun Constructors, Inc.*, –F.3d–, 2008 WL 3974059, at *3 (3dCir.Aug.28,2008)(citing *Booker v. Robert Half Int'l, Inc.*, 315 F.Supp. 2d 94, 101 (D.D.C. 2004)(stating that "[f]ailure to read or understand an arbitration agreement, or an employer's failure to explain it, simply will not constitute 'special circumstances' warranting relieving an employee from compliance with the terms

of an arbitration agreement that she signed.")).

For the above reasons, this Court finds that the FNB arbitration clause is not procedurally unconscionable.

To the extent that Plaintiffs are attempting to argue that the arbitration clause is substantively unconscionable due to unequal bargaining power, i.e., the Plaintiffs did not have a meaningful choice in accepting the arbitration clause, said argument fails as well. The United States Court of Appeals for the Third Circuit has repeatedly held that inequality in bargaining power, alone, is not a valid basis upon which to invalidate an arbitration agreement. *See Great Western Mort. Co. v. Peacock*, 110 F.3d 222, 229 (3d Cir. 1997)(citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 23 (1991)). In addition, Plaintiffs were not forced to open checking accounts with FNB, but rather could have chosen to open said accounts with a different financial institution. Accordingly, this Court finds the terms of the arbitration clause are reasonable and not substantively unconscionable.

In sum, the Court finds that Plaintiffs have failed to prove that the arbitration clause in this matter is unconscionable.

### 5. Plaintiffs' Request for Discovery

Plaintiffs next contend that discovery is necessary because there may be other documents that govern the contractual relationship between FNB and the Plaintiffs. (Civil Action No. 08-785, Docket No. 14 at 3). However, this assertion is unfounded. Per this Court's direction at oral argument held on September 4, 2008, FNB filed its Notice as to Plaintiffs' Accounts at FNB. (Civil Action No. 08-785, Docket No. 29). Specifically, said Notice states that FNB has complied with the

Order of Court of Judge Ackerman dated January 31, 2008, at Docket No. 5923 of 2007, of the Westmoreland County Court of Common Pleas, by producing complete copies of the contracts related to Plaintiffs' accounts with FNB.

### 6. Waiver of Arbitration

Plaintiffs also argue that FNB has waived its right to elect arbitration by removing this case to federal court and by failing to elect arbitration within a year of the filing of the State Court complaint. (Civil Action No. 08-785, Docket No. 14 at 3). Plaintiffs have failed to cite any case law to support this contention, and there is no limiting language contained in the agreements as to waiver. In addition, Plaintiffs' waiver argument does not prevent this Court from compelling arbitration. In fact, as stated above, "the Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone*, 460 U.S. at 941. Further, delay alone, without any prejudice to the opposing party aside from expense and inconvenience, is insufficient to constitute a waiver. *UMC Petroleum Corp. v. J & J Enterprises, Inc.*, 758 F. Supp. 1069, 1072 (W.D. Pa. 1991). In determining the amount of delay caused by a party filing a motion to compel, courts look to the date at the time that jurisdiction was proper. *Id*. This Court acquired jurisdiction in this matter on June 6, 2008, and FNB's Motion to Compel was filed on June 17, 2008. Hence, any argument as to delay is without merit.

### 7. Alleged Impact of Arbitration Fairness Act

Finally, Plaintiffs argue that Congress' deliberations regarding the Arbitration Fairness Act of 2007 should preclude the Court from enforcing any arbitration provision. (Civil Action No. 08-785, Docket No. 14 at 4). This Court is required to abide by federal law, and not ongoing legislative deliberations on an Act that may or may not be passed. Current federal law and the law in effect when the subject agreements were written and issued strongly favor arbitration and the enforcement of arbitration agreements. "In enacting the FAA and providing for the enforcement of arbitration agreements through the federal courts, Congress intended to 'reverse the longstanding judicial hostility to arbitration agreements ... and to place arbitration agreements upon the same footing as other contracts.'" *Berkery*, 256 F. Supp. 2d at 364-365 (quoting *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 89 (2000)). *See also* 2A Federal Procedure, L.Ed. § 3:789 (2008) (as a general rule, the principle of stare decisis directs courts to adhere not only to the holdings of their prior cases but also to their explications of the governing rules of law)(citing *Seminole Tribe of Florida v. Florida*, 517 U.S. 44 (1996)). Moreover, this District's mandatory Alternative Dispute Resolution Policies and Procedures support this Court's willingness to enforce arbitration provisions where they exist.[16]

## VI.  DISCUSSION OF CHASE'S MOTION TO COMPEL ARBITRATION (08-816)

Chase requests this Court to compel arbitration as it has elected to arbitrate this matter in accordance with the arbitration provision contained in the governing credit card agreements.

---

[16]

*See* United States District Court for the Western District of Pennsylvania Alternative Dispute Resolution Policies and Procedures, *available at* http://coldfusion.pawd.uscourts.gov/adr/documents /adrpoliciesprocedures. pdf.

Plaintiffs assert similar arguments against compelling arbitration as in their Response to FNB's Motion to Compel. (Civil Action 08-816, Docket No. 6 at 2-3). Specifically, Plaintiffs assert the following: (1) the arbitration clause is unconscionable and unenforceable because Plaintiffs did not have a meaningful choice in accepting said clause; (2) Chase's Cardmember Agreement and the arbitration agreements violate the PLCCA; and (3) Chase has waived its right to enforce arbitration. (*Id*.).

### 1. The Parties' Agreement

Plaintiffs allege that they entered into a contract with Chase and attach five agreements/contracts to support such relationship. (Civil Action No. 08-816, Docket No. 1 at ¶ 16, Exhibits 5-9). Specifically, Plaintiffs attach a Mastercard and Visa Cardmember Agreement (Civil Action No. 08-816, Docket No. 1, Exhibit 5), and four (4) identical Cardmember agreements (Civil Action No. 08-816, Docket No. 1, Exhibits 6-9). Chase explains that the credit cards were delivered to Plaintiffs along with said agreements and concedes that the terms and conditions governing these accounts are as set forth in the agreements. (Civil Action No. 08-816, Docket No. 3 at 2; Docket No. 4 at 2). All of the agreements contain an arbitration clause. Specifically, the arbitration clause set forth in the Agreement identified as Exhibit 5 provides as follows:

> **Claims Covered**. Any claim or dispute ("Claim", which term may refer to more than one claim as is appropriate for the context in which it is used) by either you or us against the other, or against the employers, agents, or assigns of the other arising from or as against from or relating in any way to Cardmember Agreement, any prior Cardmember Agreement, your credit card Account or the advertising, application or approval of your Account, will, at the election of either you or us, be resolved by binding arbitration. This Arbitration

> Agreement governs all Claims, whether such Claims are based on law, statute, contract, regulation, ordinance, tort, common law, constitutional provision, or any legal theory of law such as respondent superior, or any other legal or equitable ground and whether such Claims seek as remedies money damages, penalties, injunctions, or declaratory or equitable relief. Claims subject to this Arbitration Agreement include Claims regarding the applicability of this Arbitration Agreement or the validity of the entire Cardmember Agreement or any prior Cardmember Agreement. As used in this Arbitration Agreement, the term "Claim" is to be given the broadest possible meaning."

The Arbitration clause appears on pages thirteen (13) through seventeen (17) of the agreement. In addition, the title "Arbitration Agreement" appears in bold and in all capital letters. It also contains a capitalized statement advising the reader to read the arbitration agreement carefully, stating and clearly spelling out the legal rights which a party does and does not have. On the front page of Exhibit 5, the agreement sets out the meaning of the words used in the agreement. Most importantly, it alerts Plaintiffs that it contains a binding arbitration provision. "'Agreement' means this document (which has a binding arbitration provision that may affect your right to go to court, your right to a jury trial, and your right to participate in a class action or other representative action) ..." (Civil Action No. 08-816, Docket No. 1, Exhibit 5).

The four (4) other agreements identified in Exhibits 6-9 also contain arbitration provisions that state as follows:

> **Claims Covered**. Either you or we may, without the other's consent, elect mandatory, binding arbitration of any claim, dispute or controversy by either you or us against the other, or against the employees, parents, subsidiaries, affiliates, beneficiaries, agents or assigns of the other, arising from or relating in any way to the Cardmember Agreement, any prior Cardmember Agreeement, your

credit card Account or the advertising, application, approval of your Account ("Claim"). This Arbitration Agreement governs all Claims, whether such claims are based on law, statute, contract, regulation, ordinance, tort, common law, constitutional provision, or any legal theory of law such as respondent superior, or any other legal or equitable ground and whether such Claims seek as remedies money damages, penalties, injunctions, or declaratory or equitable relief, Claims subject to this Arbitration agreement or the validity of the entire Cardmember Agreement or any prior Cardmember Agreement. This Arbitration Agreement includes Claims that arose in the past, or arise in the present or future. As used in this Arbitration Agreement, the term Claim is to be given the broadest possible meaning. Claims subject to Arbitration include Claims that are made as counterclaims, cross claims, third party claims, interpleaders or otherwise, and a party who initiates a proceeding in court may elect arbitration with respect to any such Claims advanced in the lawsuit by any party or parties.

(Civil Action No. 08-816, Docket No. 1, Exhibits 6-9).[17]

According to the Cardmember Agreement, "the agreement is governed by the laws of the United States of America (federal law) and the State of Delaware. Any dispute concerning any item in this agreement will be resolved by those laws." (Civil Action No. 08-816, Docket No. 1, Exhibit 5 at 6). The remaining agreements contain a similar choice of law provision. Specifically, Exhibits 6 and 9 state,again, in capitalized letters, "this agreement and your account will be governed by the law of the state of Delaware and, as applicable, Federal Law." (Civil Action No. 08-816, Docket No. 1, Exhibit 6 at 2; Exhibit 9 at 2). Exhibits 7 and 8 state the following in capitalized letters "the terms

_____

[17]

Under Agreement 5, the party requesting arbitration must use one of the following arbitration administrators: American Arbitration Association; JAMS; or the National Arbitration Forum. (Docket No. 1, Exhibit 5 at 14). The other agreements list as options only the American Arbitration Association or the National Arbitration Forum. (Docket No. 1, Exhibits 6-9).

and enforcement of this agreement and your account shall be governed and interpreted in accordance with federal law and, to the extent state law applies, the law of Delaware, without regard to conflict-of law principles. The law of Delaware, where we and your account are located, will apply no matter where you live or use your account." (Civil Action No. 08-816, Docket No. 1, Exhibit 7 at 4; Exhibit 8 at 4).

### 2.    Whether the Arbitration Agreement is Within the Scope of the FAA

The parties do not dispute that the contract in this case involves "commerce" as defined in 9 U.S.C. § 1. Further, on page thirteen (13) of the Mastercard and VISA Cardmember Agreement, Exhibit 5, the arbitration agreements states "[t]his Arbitration Agreement is made pursuant to a transaction involving interstate commerce, and shall be governed by and be enforceable under the Federal Arbitration Act (the "FAA"). 9 U.S.C. § 1-16." This sentence regarding the applicability of the FAA is also included in the other agreements under the section titled "Binding Arbitration." (Civil Action No. 08-816, Docket No. 1, Exhibit 6 at 1; Exhibit 7 at 3; Exhibit 8 at 3; Exhibit 9 at 1). Hence, the Court finds that the arbitration clauses at issue fall within the scope of the FAA.

Further, similar to FNB's arbitration clause, the arbitration provisions in this cause all state that "any claim or dispute" is covered by the arbitration agreements, stating that "Claim" should be interpreted in the broadest manner possible. Considering that the arbitration clauses in all of the agreements governing this matter are broad, covering "any claim or dispute," the Court finds that all the claims asserted by the Plaintiffs arise out of alleged fraudulent activity associated with the credit cards held with Chase. Thus, the Court finds that the subject dispute falls within the substantive scope of the arbitration agreements.

### 3.     Whether the Arbitration Clause is Valid and Enforceable

Plaintiffs assert the same arguments of enforceability and unconscionability in this case as in their case against FNB.  Specifically, the Plaintiffs assert that: (1) they did not have a meaningful choice in accepting Defendant Chase's arbitration clause; and (2) the Cardmember Agreement and the arbitration agreement violate the PLLCA.[18] (Civil Action No. 08-816, Docket No. 6 at 2-3).

As stated above, pursuant to section two of the FAA, federal courts may apply state law where applicable, i.e., where a party raises contract defenses to invalidate arbitration agreements. *Harris,* 183 F.3d at 179.  In this case, Plaintiffs have raised the contract defense of unconscionability. According to the choice of law provisions[19] contained in the various cardmember agreements at issue, Delaware law must be applied to determine unconscionability. *See Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529 (3d. 2005) (applying choice of law provision to arbitration dispute).

Under Delaware law, a contract is unconscionable if it is "such that no man in his senses and not under delusion would make on the one hand, and as no honest or fair man would accept, on the other."  *Stinger v. Chase Bank, USA, NA*, 265 Fed. Appx. 224, 228 (5th Cir. 2008)(quoting *Tulowitzki v. Atl. Richfield Co.*, 396 A.2d 956, 960 (Del. 1978)). Further, "Mere disparity between the bargaining power of parties to a contract will not support a finding of unconscionability."

---

[18] *See* note 10, *supra.*

[19] Federal courts exercising diversity jurisdiction must apply the choice of law rules of the forum state.  *Kruzits v. Okuma Mach. Tool, Inc.*, 40 F. 3d 52, 55 (3d Cir. 1994).  Accordingly, this Court must apply Pennsylvania choice of law rules in this case.  "Pennsylvania courts generally honor the intent of the contracting parties and enforce choice of law provisions in contracts executed by them." *Id.*

*Stinger*, 265 Fed. Appx. at 228 (quoting *Graham v. State Farm Mut. Auto. Ins. Co.*, 565 A.2d 908, 912 (Del.1989). Rather, in order for a contract clause to be unconscionable, the Court must determine that one party had superior bargaining power because the terms of the contract clause are "so one sided to be oppressive." *Id*.

Plaintiffs argue that Chase's arbitration clause is unconscionable because they did not have a meaningful choice in accepting the clause. This argument is without merit under Delaware law. The terms of the arbitration clause are not one sided or oppressive. In fact, the terms are bilateral; i.e. as detailed above, either party, without the other's consent, can enforce the arbitration clause as to any claim, dispute or controversy raised by or against either party. Moreover, Plaintiffs did have a choice as they could have opened credit cards with other financial institutions or they could have rejected the terms of the agreements. (Civil Action No. 08-816, Docket No. 1, Exhibits 5-9).

Further, courts have routinely held that under Delaware law arbitration clauses in credit card agreements are not unconscionable. *See Stinger*, 265 Fed. Appx. at 228-229 (5th Cir. 2008); *Heiges v. JPMorgan Chase Bank, N.A.*, 521 F.Supp.2d 641, 649-50 (N.D.Ohio 2007); *Carmack v. Chase Manhattan Bank (USA)*, 521 F.Supp.2d 1017, 1025 (N.D.Cal 2007); *Marsh v. First USA Bank, N.A.*, 103 F.Supp.2d 909, 920 (N.D.Tex. 2000).

Next, Plaintiffs argue that the arbitration clause contained in the agreements is unenforceable because the clause violates the PLCCA. (Civil Action No. 08-816, Docket No. 6 at 2). However, due to the choice of law provisions contained in the various agreements, this Court cannot say Pennsylvania law, i.e. the PLCCA, has any impact on the Plaintiffs' claims. As detailed above, the cardmember agreements' choice of law provisions direct this Court to apply federal law where

applicable and/or Delaware law.[20] Thus, the Court finds Plaintiffs' PLCCA argument to be without merit.[21]

### 4. Plaintiffs' Waiver Argument

For the reasons previously discussed, the Court finds that any disputes regarding waiver of the arbitration clause should be determined by the arbitrator.[22] Moreover, the arbitration provisions in each of the five contracts address the issue of waiver, stating "failure or forebearance to enforce the Arbitration Agreement at any particular time, or in connection with any particular Claims, will not constitute a waiver of any rights to require arbitration at a later time or in connection with any other Claims." (Civil Action No. 08-816, Docket No. 1, Exhibit 5 at 16; Exhibit 6 at 1; Exhibit 7 at 4; Exhibit 8 at 4; Exhibit 9 at 2).

## VII. CONCLUSION

In accordance with pertinent case and statutory law, the Court finds that the arbitration clauses at issue in both cases are valid and enforceable. As such, the parties' disputes are submitted

---

[20]

Absent limiting language, "broad, unconditional forum selection clauses which mandate jurisdiction in a specific forum apply to all claims..." *Hope v. Cancer Treatment Foundation, Inc. v. Mountaineer Park, Inc.*, Civil No. 06-1671, 2007 WL 184820, at *2 (W.D. Pa. Jan. 19. 2007)(citing *Oak Sys. v. Francotyp-Postalia, Inc.*, Civ. No. 01-2794, 2002 U.S. Dist. LEXIS 2213, at *7-8 (E.D. Pa. Feb 5, 2002).

[21]

In addition, the Court notes that Plaintiffs fail to cite any case law for said argument. Further, unlike the Plaintiffs' response to the FNB motion, Plaintiffs fail to specify what language in the arbitration clauses violates the PLCCA or any similar Delaware law.

[22] See pages 17-18, *supra*.

to arbitration.  Therefore, FNB's Motion to Compel Arbitration or, in the Alternative, Partial Motion to Dismiss Plaintiffs' Amended Complaint [7] in Civil Action No. 08-785, is GRANTED and the proceedings at Civil Action No. 08-785 are stayed pending the completion of arbitration.   In addition, Chase's Motion to Dismiss Plaintiffs' Amended Complaint [3], to the extent it requests this Court to Compel Arbitration, at Civil Action No. 08-816, is GRANTED and the proceedings at Civil Action No. 08-816 are stayed pending the completion of arbitration.  Appropriate orders follow.

s/Nora Barry Fischer
United States District Judge

Dated:          September 16, 2008

cc/ecf:         All counsel of record.